1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              EASTERN DISTRICT OF CALIFORNIA
10

11    BOBBY DARRELL JOHNSON; et al.,          No. 2:14-cv-01338-KJM-EFB

12              Plaintiffs,

13         v.                                 ORDER

14    SHASTA COUNTY, a public entity, et al.,

15              Defendants.

16

17              This matter is before the court on the motion by defendants Sutter County,

18    Matthew Maples, James Casner, and Michael Gwinnup (Sutter defendants) to dismiss plaintiffs'

19    First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mot. to

20    Dismiss, ECF No. 6.)  Plaintiffs oppose the motion (Pls.' Opp'n, ECF No. 9), and the Sutter

21    defendants have replied (ECF No. 10).  In support of their opposition plaintiffs filed a request for

22    judicial notice, including a declaration and exhibits.  (ECF Nos. 9-1 through 9-7.)  The Sutter

23    defendants object and move to strike the request for judicial notice and the declaration and the

24    exhibits.  (ECF No. 11.)  The court need not address the Sutter defendants' objection and motion

25    to strike because the court does not rely on the facts submitted in connection with plaintiffs'

26    request for judicial notice.  Finding the matter suitable for disposition on the papers, the court

27    submitted the motion without argument.  As explained below, the court GRANTS in part and

28    DENIES in part defendants' motion.

                                        1

I.        ALLEGATIONS OF THE COMPLAINT

On June 4, 2014, plaintiffs filed a first amended complaint (the Complaint) against defendants Shasta County, Cary Erickson, Tom Flemming, Ray Hughes, David Renfer, Kyle Wallace, Eric Magrini, Gene Randal, Nick Thompson, Craig Tippings, Jesse Wells, Sutter County, Matthew Maples, James Casner, and Michael Gwinnup (defendants).  (Pls.' First Am. Compl., ECF No. 5 ("Compl.").)  The Complaint alleges the following claims: (1) violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against all individual defendants; (2) a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against Shasta and Sutter Counties; (3) violation of California Civil Code § 52.1 against all defendants; (4) negligence against all defendants; (5) assault and battery against all defendants; (6) false arrest or imprisonment against all defendants; and (7) violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act against Shasta and Sutter Counties.  (*See generally* Compl.)   All of the claims arise out of defendants' execution of a search warrant on plaintiffs' residence.

Defendants Matthew Maples, James Casner, and Michael Gwinnup are law enforcement officers employed by the Sutter County Sheriff's office.  (Compl. ¶¶ 19–21.) Defendants Cary Erickson, Tom Flemming, Ray Hughes, Eric Magrini, Gene Randal, David Renfer, Nick Thompson, Craig Tippings, and Kyle Wallace are law enforcement officers employed by the Shasta County Sheriff's office.  (*Id.* ¶¶ 8–16.)  Defendant Jesse Wells, M.D., is "employed as a volunteer law enforcement officer and provider of in-field medical services" for the Shasta County Sheriff's office.  (*Id.* ¶ 17.)

Plaintiffs Bobby Johnson, Sharon Johnson, Tanya Johnson, and Angela Johnson, a thirteen-year old minor, reside at 13942 Sundust Road, Redding, California.  (*Id.* ¶¶ 29, 33.)  At 7:00 a.m. on August 13, 2013, defendants arrived at plaintiffs' residence "in a convoy comprised of military combat-style tactical transports and other vehicles."  (*Id.* ¶¶ 29, 31.)  "Defendants wore masks, battle-dress uniforms, and carried assault rifles and other long guns."  (*Id.* ¶ 31.) Defendant Gwinnup and possibly other Sutter County officers procured the warrant to search the residence.  (*Id.* ¶ 30.)  The warrant was issued by a Sutter County Superior Court judge.  (*Id.*)

"Defendants ordered [plaintiffs] to come out of their home." (*Id.* ¶ 32.) "Plaintiff [Bobby Johnson] was the first to exit the house." (*Id.*) Though he "was totally compliant, unarmed, had committed no crime, and posed no immediate threat to anyone, . . . [d]efendants held him at gunpoint and threatened to shoot him." (*Id.*) "When . . . [d]efendants stated that they were going to handcuff [him], he told them that he could not move his arm behind his back because of a very recent breast-cancer surgery that left a large, unhealed incision scar on his chest." (*Id.*) Bobby Johnson "was shirtless, and his recent surgical scars were visible to [d]efendants." (*Id.*) Defendants "repeatedly and forcefully wrenched [his] arm behind his back to handcuff him, . . . causing severe and painful injuries." (*Id.*) Defendants forced Bobby Johnson "to sit handcuffed on the ground for a significant period of time." (*Id.*)

Plaintiff Tanya Johnson and her daughter plaintiff Angela Johnson came out of the house after Bobby Johnson. (*Id.* ¶ 33.) They "were totally compliant, and [d]efendants knew [Angela Johnson] was obviously a child." (*Id.*) Though Tanya and Angela Johnson "pos[ed] no threat to anyone and despite their obeying all [d]efendants' orders," defendants "held them at gunpoint." (*Id.*) Tanya Johnson "told [d]efendants that she had recently undergone shoulder surgery and pointed out her surgical scars and deformity." (*Id.* ¶ 34.) Defendants "forcefully wrenched [Tanya Johnson's] arm behind her back" to handcuff her, causing severe and painful injuries. (*Id.*) Defendants "forced [her] to sit handcuffed on the ground for a significant period of time." (*Id.*) Later, "[d]efendants forcefully yanked [her] to her feet by her handcuffs, causing further severe and painful injuries." (*Id.*)

Plaintiff Sharon Johnson is Bobby Johnson's wife and Tanya Johnson's mother. (*Id.* ¶ 35.) Bobby Johnson and Tanya Johnson informed defendants that Sharon Johnson "was very ill, confined to a hospital bed, and physically unable to come outside of the house." (*Id.*) Sharon Johnson "was unarmed and posed no threat to anyone." (*Id.*) "Defendants pointed guns at [Sharon Johnson], forced her to get out of her hospital bed, and ordered her to let go of her walker and put up her hands, despite her obvious physical illness and disability." (*Id.*)

Defendants "raided [plaintiffs'] residence and other buildings on their property," "damaged [plaintiffs'] personal property," and "seized [Bobby Johnson's] Bobcat machine and

3

1   firearms, among other property." (*Id*. ¶ 36.)  Defendants interrogated plaintiffs "and throughout

2   this incident, used profanity and other unprofessional language expressing [d]efendants'

3   animosity toward [p]laintiffs." (*Id*.)  Defendants "threatened to kill [Tanya Johnson's] dog."

4   (*Id*.)  Bobby Johnson and Tanya Johnson remained handcuffed for thirty minutes or more, and

5   "[d]efendants remained at [p]laintiffs' home and held [p]laintiffs in custody for about four hours."

6   (*Id*.)

7           Defendants' actions included "drawing and exhibiting of their firearms, subjecting

8   [p]laintiffs to multiple gun points, handcuffing, and repeatedly shouting at [p]laintiffs, who had

9   committed no crime, were unarmed, and did not pose any threat to [d]efendants or others at any

10  time." (*Id*. ¶ 37.)  "[N]o criminal charges were ever filed against any [p]laintiff." (*Id*.)

11  "Plaintiffs have required medical care as a result of" defendants' actions. (*Id*.)  Bobby Johnson's

12  physical injuries include "a traumatic hematoma on his right chest wall." (*Id*. ¶ 39(b).)  Tanya

13  Johnson's physical injuries include "a subluxed left shoulder." (*Id*. ¶ 39(c).)

14  II.     STANDARD

15          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

16  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

17  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

18  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

19  1990).

20          Although a complaint need contain only "a short and plain statement of the claim

21  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

22  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

23  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

24  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

25  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

26  conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting

27  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

28  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

4

1   its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

2   interplay between the factual allegations of the complaint and the dispositive issues of law in the

3   action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

4          In making this context-specific evaluation, this court must construe the complaint

5   in the light most favorable to the plaintiff and accept as true the factual allegations of the

6   complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

7   conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted*

8   *in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

9   judicial notice" or to material attached to or incorporated by reference into the complaint.

10  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

11  III.   <u>ANALYSIS</u>

12      A.   <u>Fourth Amendment:  Judicial Deception in Obtaining a Search Warrant</u>

13         Plaintiffs challenge the search warrant that was executed on their residence.

14  (Compl. ¶ 30, ECF No. 5.)  Specifically, plaintiffs allege that the search warrant was unlawful

15  and lacked probable cause because it was procured based on false statements or misleading

16  omissions made by defendant Gwinnup.  (*Id.*)  The Sutter defendants argue this claim should be

17  dismissed on two grounds (1) the allegations are conclusory and no actual facts are alleged, and

18  (2) plaintiffs have not established the false statements or omissions were material to a finding of

19  probable cause.  (ECF No. 6-1 at 5.)

20         A person who knowingly or with reckless disregard for the truth includes material

21  false statements or omits material facts in an affidavit submitted in support of a warrant

22  application may be liable under § 1983 for a Fourth Amendment violation.  *Butler v. Elle*,

23  281 F.3d 1014, 1024–26 (9th Cir. 2002).  To state a claim for judicial deception and survive a

24  motion to dismiss, "a § 1983 plaintiff must show that the investigator 'made deliberately false

25  statements or recklessly disregarded the truth in the affidavit' and that the falsifications were

26  'material' to the finding of probable cause." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119,

27  1126 (9th Cir. 2002) (quoting *Hervey v. Estes*, 65 F.3d 784, 790 (9th  Cir. 1995)).  Facts pled on

28  "information and belief" are sufficient as long as the other *Iqbal–Twombly* requirements are

1   satisfied.  *See Hightower v. Tilton*, No. 08–1129, 2012 WL 1194720, at *3–4 (E.D. Cal. Apr. 10,

2   2012) (citing *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)).

3           In *Galbraith*, plaintiff brought a § 1983 action against the county and county

4   coroner for falsifying an autopsy report, leading to plaintiff's false arrest and prosecution for

5   murder.  307 F.3d at 1119.  Plaintiff's allegation that the coroner's "lies proximately caused

6   [plaintiff's] arrest and prosecution for murder" was sufficient to establish that the coroner's

7   reckless disregard for the truth and lies were material to the finding of probable cause.  *Id.* at

8   1127.

9           Here, plaintiffs have alleged defendants entered and searched their home "despite

10  knowing that none of . . . [plaintiffs] were suspected of any crime, and despite not having any

11  arrest warrants for any of . . . [plaintiffs]."  (Compl. ¶ 29.)  Plaintiffs further allege on information

12  and belief that defendant Gwinnup and possibly other Sutter County law enforcement officers

13  procured the search warrant "based on deliberate and/or reckless false statements and/or

14  misleading omissions made by [d]efendant [Gwinnup], the affiant, to the judicial officer . . . who

15  issued the warrant."  (*Id.* ¶ 30.)

16          Although plaintiffs have sufficiently alleged the first prong required by *Galbraith*,

17  that defendant Gwinnup made deliberately false statements or recklessly disregarded the truth in

18  the affidavit, they have not sufficiently alleged the falsifications were "material" to the finding of

19  probable cause.  *See* 307 F.3d at 1126.  Accordingly, the Sutter defendants' motion to dismiss

20  plaintiff's claim for violation of their Fourth Amendment rights under a theory of judicial

21  deception is GRANTED with leave to amend if plaintiffs can do so consonant with Rule 11.

22      B.      Federal and State Law Claims Against Defendants Casner, Maples, and Gwinnup

23          The Sutter defendants assert plaintiffs' claims under federal law, 42 U.S.C. § 1983,

24  and state law, assault, false arrest, negligence, and Civil Code § 52.1, are overly broad because

25  they generally refer to all defendants having conducted themselves in the same manner.  (ECF

26  No. 6-1 at 5.)  As a result, the Sutter defendants argue all claims against defendants Casner,

27  Maples, and Gwinnup should be dismissed.  (*Id.*)  Plaintiffs counter each defendant is liable under

28  /////

§ 1983 as an integral participant to the alleged unreasonable search and seizure and collective use of force.  (ECF No. 9 at 8.)

To state a § 1983 claim, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the person who committed the alleged deprivation was acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  An officer may be liable for the conduct of others where he or she has been an "integral participant" in the alleged constitutional violation.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007).  "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation," *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004), "[b]ut it does require some fundamental involvement in the conduct that allegedly caused the violation," *Blankenhorn*, 485 F.3d at 481 n.12.  An officer who provides armed backup or who participated in a police action with knowledge that a particular form of force would be used but without objecting may be liable under the doctrine of integral participation.  *Boyd*, 374 F.3d at 780 (citing *James ex rel. James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) and *Melear v. Spears*, 862 F.3d 1177, 1186 (5th Cir. 1989)).

The Sutter defendants argue each officer may only be liable for his own conduct, citing *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996).  In *Chuman*, the court rejected a jury instruction that allowed the jury to "lump all the defendants together, rather than require it to base each individual's liability on his own conduct."  *Id.*  The lower court had instructed the jury "when the deprivation of rights is the result of a 'team effort' all members of the 'team' may be held liable."  *Id.* at 294.  The *Chuman* court found the "team effort" instruction deviated from the "integral participation" standard, expanding it "to include liability based on team effort alone." *Id.* at 295.  *Chuman* did not reject but approved of the integral participation standard and therefore does not support the Sutter defendants' argument.  *See id.*

Here, plaintiffs have alleged that each defendant participated in the raid of their home, held them at gunpoint, handcuffed plaintiffs Bobby Johnson and Tanya Johnson for thirty minutes or more and held plaintiffs in custody for four hours.  (Compl. ¶¶ 29, 31–37. )  Construed in the light most favorable to plaintiffs, the allegations of plaintiffs' amended complaint with

1  respect to their § 1983 claim are sufficient to suggest each defendant was an integral participant

2  in the alleged violation.  Accordingly, the Sutter defendants' motion to dismiss plaintiffs' § 1983

3  claim against defendants Casner, Maples, and Gwinnup is DENIED.

4         The Sutter defendants have cited no authority to support their argument that

5  plaintiffs' state law claims should also be dismissed because they refer to all defendants having

6  conducted themselves in the same manner.  As a result, the Sutter defendants' motion to dismiss

7  plaintiffs' state law claims on this ground also is DENIED.

8        C.    ADA and Rehabilitation Act

9         The Sutter defendants argue plaintiffs' claim for violations of the ADA and § 504

10  of the Rehabilitation Act cannot proceed because (1) there was no arrest (ECF No. 10 at 7), and

11  (2) the physical limitations of plaintiffs Bobby Johnson, Sharon Johnson, and Tanya Johnson are

12  not disabilities because they do not substantially limit major life activities (ECF No. 6-1 at 7).

13        1.    Arrest

14         Title II of the ADA provides "no qualified individual with a disability shall, by

15  reason of such disability, be excluded from participation in or be denied the benefits of the

16  services, programs, or activities of a public entity, or be subjected to discrimination by any such

17  entity."  42 U.S.C. § 12132.  In *Sheehan v. City and County of San Francisco*, 743 F.3d 1211,

18  1232 (9th Cir. 2014), the Ninth Circuit ruled that the ADA applies to arrests.  In doing so, the

19  court noted "that exigent circumstances inform the reasonableness analysis under the ADA, just

20  as they inform the distinct reasonableness standard under the Fourth Amendment."  *Id.*  The

21  *Sheehan* court recognized two types of ADA claims: (1) "wrongful arrest, where police wrongly

22  arrest someone with a disability because they misperceive the effects of that disability as criminal

23  activity;" and (2) "reasonable accommodation, where, although police properly investigate and

24  arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably

25  accommodate the person's disability in the course of the investigation or arrest, causing the

26  person to suffer greater injury or indignity in that process than other arrestees."  *Id.*  Plaintiffs

27  have asserted the second type of claim here.

28  /////

Sutter defendants argue there was no arrest, and therefore *Sheehan* does not apply (ECF No. 10 at 7), but do not cite any case law to support this argument.  Plaintiffs cite several cases indicating the determination whether a detention becomes an arrest is fact specific, based on a "totality of the circumstances."  *See Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996) ("In looking at the totality of the circumstances, we consider both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, and the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken.") (internal citation omitted). Plaintiffs claim the use of handcuffs is an important factor in determining whether an arrest occurred, citing *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990) and *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) (handcuffing "substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop").  *See also Washington*, 98 F.3d at 1188 ("if the police draw their guns it greatly increases the seriousness of the stop").

Here, plaintiffs have alleged they were unlawfully arrested.  (Compl. ¶¶ 71–74.) They also allege that they were held at gunpoint, handcuffed, and held in custody for four hours. (*Id.* ¶¶ 32, 33, 36.)  Plaintiffs' allegations that they were arrested are sufficient to survive a motion to dismiss.

### 2.   Disability

To state a claim for failure to accommodate under Title II of the ADA, a plaintiff must show he or she: (1) is an individual with a disability; (2) is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) was excluded, denied benefits, or discriminated against by reason of his or her disability.  *Sheehan*, 743 F.3d at 1232.  Similarly, to state a claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal

9

1   financial assistance." *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007)

2   (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).  The Ninth Circuit has

3   held "[t]here is no significant difference in analysis of the rights and obligations created by the

4   ADA and the Rehabilitation Act."  *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11

5   (9th Cir. 1999); *see Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) (noting "Congress

6   has directed that the ADA and RA be construed consistently").  Therefore, this court's analysis

7   under the ADA below also applies to plaintiff's claims under the Rehabilitation Act.

8          The Sutter defendants contend the physical limitations of plaintiffs Bobby

9   Johnson, Sharon Johnson, and Tanya Johnson do not constitute disabilities under prong 1 of

10  *Sheehan* and *O'Guinn* because they do not substantially limit major life activities.  (ECF No. 6-1

11  at 7.)

12         The ADA defines "disability" as a "physical or mental impairment that

13  substantially limits one or more of the major life activities of such individual."  42 U.S.C.

14  §12102(1)(A).  Major life activities include, but are not limited to "caring for oneself, performing

15  manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking,

16  breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C.

17  § 12102(2)(A).  In *Reese v. Barton Healthcare Systems,* 606 F. Supp. 2d 1254, 1261 (E.D. Cal.

18  Dec. 15, 2008), the court held that plaintiff's allegations were sufficient to state an ADA claim at

19  the pleading stage.  The *Reese* plaintiff alleged she had a shoulder injury that rendered her

20  permanently disabled, she was substantially limited in the major life activities of lifting, sleeping

21  and reaching, among others, and her doctor wrote her a note stating her disability limited her

22  work responsibility of conducting echo exams.  *Id.*  The court ruled these allegations were

23  "sufficient to put defendant on notice of plaintiff's disability."  *Id.  See also Benner v. Createc

24  Corp.*, No. 08-40, 2008 WL 2437726, at *3 (E.D. Tenn. June 13, 2008) (holding plaintiff's

25  allegations that she was disabled because of her breast cancer and defendant fired her because of

26  her disability sufficient to withstand motion to dismiss).

27  /////

28  /////

Here, plaintiffs have alleged Sutter County failed to reasonably accommodate the

disabilities of Bobby Johnson, Sharon Johnson, and Tanya Johnson including:

> [Bobby Johnson's] breast cancer and post surgical sequalae with significant limitations in the ability to move his arms and upper torso, [Sharon Johnson's] late stage breast cancer, with significant limitations in the ability to move, walk, or stand without assistance, and [Tanya Johnson's] anterior glenohumeral instability of her left shoulder and post-surgical sequalae with significant limitations in the ability to move her arms and upper torso, . . . .

(Compl. ¶ 85.)

With respect to Bobby Johnson in particular, plaintiffs have alleged:

> When the [d]efendants stated that they were going to handcuff [him], he told them that he could not move his arm behind his back because of a very recent breast-cancer surgery that left a large, unhealed incision scar on his chest. [Bobby Johnson] was shirtless, and his recent surgical scars were visible to [d]efendants. Nevertheless, [d]efendants subjected [Bobby Johnson] to a high level of force when they repeatedly and forcefully wrenched [his] arm behind his back to handcuff him despite his known disability—causing severe and painful injuries. Defendants then forced [Bobby Johnson] to sit handcuffed on the ground for a significant period of time.

(*Id.* ¶ 32.)

Plaintiffs have alleged Bobby and Tanya Johnson informed defendants that Sharon

Johnson

> was very ill, confined to a hospital bed, and physically unable to come outside of the house. [She] was unarmed and posed no threat to anyone. Defendants pointed guns at [Sharon Johnson], forced her to get out of her hospital bed, and ordered her to let go of her walker and put up her hands, despite her obvious physical illness and disability.

(*Id.* ¶ 35.)

With respect to Tanya Johnson, plaintiffs have alleged:

> [Tanya Johnson] told [d]efendants that she had recently undergone shoulder surgery and pointed out her surgical scars and deformity to [d]efendants. Nevertheless, [d]efendants forcefully wrenched [her] arm behind her back, causing severe and painful injuries, to handcuff her. Once handcuffed, [d]efendants forced [Tanya Johnson] to sit handcuffed on the ground for a significant period of time; later, [d]efendants forcefully yanked [Tanya Johnson] to her feet by her handcuffs, causing further severe and painful injuries.

(*Id.* ¶ 34.)

1   Based on these allegations, plaintiffs have alleged impairments within the meaning

2   of the ADA sufficient "to put defendant[s] on notice of plaintiff[s'] disabilit[ies]." *See Reese*, 606

3   F. Supp. 2d at 1261.  The Sutter defendants' motion to dismiss plaintiffs' ADA and Rehabilitation

4   Act claims is DENIED.

5   D.   *Monell* Claims

6   The Sutter defendants move to dismiss plaintiffs' *Monell* claims on the ground that

7   plaintiffs have failed to sufficiently allege facts of an underlying constitutional violation.  (ECF

8   No. 6-1 at 8.)  The Sutter defendants also claim plaintiffs do not adequately allege express

9   unconstitutional policies.  (*Id.*)

10   Municipalities may be held liable as "persons" under 42 U.S.C. § 1983, but not for

11   the unconstitutional acts of their employees based solely on a respondeat superior theory.  *Monell*,

12   436 U.S. at 691.  Rather, a plaintiff seeking to impose liability on a municipality under § 1983 is

13   required "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of*

14   *Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell,* 436 U.S. at 694; *Pembaur v.*

15   *Cincinnati*, 475 U.S. 469, 480–81 (1986); and *City of Canton v. Harris*, 489 U.S. 378, 389

16   (1989)).

17   To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to

18   dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but

19   must contain sufficient allegations of underlying facts to give fair notice and to enable the

20   opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d

21   631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  A *Monell*

22   claim may be stated under three theories of municipal liability: (1) when official policies or

23   established customs inflict a constitutional injury; (2) when omissions or failures to act amount to

24   a local government policy of deliberate indifference to constitutional rights; or (3) when a local

25   government official with final policy-making authority ratifies a subordinate's unconstitutional

26   conduct. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010).

27   /////

28   /////

Plaintiffs contend they have alleged facts to state claims under all three theories. (ECF No. 9 at 14.)  The court addresses the sufficiency of the allegations supporting each theory in turn.

1.   <u>Official Policy or Custom</u>

A plaintiff may establish municipal liability by demonstrating "the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'"  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002)).  To establish liability for governmental entities under this theory, a plaintiff must show (1) that the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted).

Defendants argue plaintiffs have not alleged express unconstitutional policies and instead their allegations "appear to be a hodge-podge of boilerplate language that must be discounted."  (ECF No. 6-1 at 9.)

Plaintiffs have alleged defendant Sutter County had "the following customs, policies, practices, and/or procedures . . . ":

> a. To use or tolerate the use of excessive and/or unjustified force, including pointing guns during the execution of search warrants and other at other times without justification;
>
> b. To unlawfully arrest individuals without probable cause or justification during the execution of search warrants;
>
> c. To fail to use appropriate and generally accepted law enforcement procedures in handling injured and disabled persons;
>
> d. To cover-up violations of constitutional rights by any or all of the following:
>
>> i. by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, and/or handling of emotionally disturbed persons;

13

ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

iii. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

e. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department;

…

g. To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct made under California Government Code § 910 et seq.

(Compl. ¶ 48.)

Plaintiffs have also alleged the other elements of a *Monell* claim based on an official policy or custom: they have alleged a violation of a constitutional right (*id.* at 10), they have alleged defendant Sutter County "failed to properly . . . monitor, supervise, evaluate, investigate, and discipline [d]efendants, with deliberate indifference to [p]laintiffs' constitutional rights" (*id.* ¶49); and they have alleged defendant Sutter County's customs and policies "were a moving force and/or proximate cause of" the violations of plaintiffs' constitutional rights (*Id.* ¶ 51).

Plaintiffs' allegations are sufficient to state a *Monell* claim on the basis of official policy or custom.  These allegations give Sutter County fair notice to enable it to defend itself in this matter.

2.    Omissions or Failures Establishing Deliberate Indifference

A municipality's failure to train its police officers may amount to a policy of deliberate indifference.  *See Price*, 513 F.3d at 973.  To state a claim for failure to train, a plaintiff must show (1) "the existing training program" is inadequate "in relation to the tasks the particular officers must perform"; (2) the officials have been deliberately indifferent "to the rights of

14

persons with whom the police come into contact"; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right." *Merritt v. Cnty. of L.A*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and quotation marks omitted).

In the instant matter, plaintiffs have alleged defendant Sutter County "fail[ed]to institute, require, and enforce proper and adequate training, supervision, policies, and procedures . . . when the need for such training, supervision, policies, and procedures [was] obvious." (Compl. ¶ 48(f).)  As noted above, plaintiffs have alleged Sutter County failed to train its officers concerning the following customs or policies:

> a. To use or tolerate the use of excessive and/or unjustified force, including pointing guns during the execution of search warrants and other at other times without justification;
>
> b. To unlawfully arrest individuals without probable cause or justification during the execution of search warrants;
>
> c. To fail to use appropriate and generally accepted law enforcement procedures in handling injured and disabled persons;
>
> d. To cover-up violations of constitutional rights by any or all of the following:
>
>> i. by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, and/or handling of emotionally disturbed persons;
>>
>> ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and
>>
>> iii. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;
>
> e. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department[.]

(*Id.* ¶ 48.)

/////

1    Plaintiffs have further alleged defendant Sutter County "failed to properly hire,

2    train, instruct, monitor, supervise, evaluate, investigate, and discipline [d]efendants, with

3    deliberate indifference to [p]laintiffs' constitutional rights." (*Id.* ¶ 49.)  Plaintiffs have also

4    alleged this failure to train was "a moving force and/or proximate cause of the deprivations of

5    [p]laintiffs' . . . rights in violation of 42 U.S.C. § 1983." (*Id.* ¶ 51.)

6    The court finds plaintiffs' allegations are sufficient to state a claim for municipal

7    liability based on failure to train and withstand a motion to dismiss.

8    3.    Ratification

9    A plaintiff may claim *Monell* liability where an "official with final policy-making

10   authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it."

11   *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  A policymaker's "knowledge of an

12   unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231,

13   1239 (9th Cir. 1999).  "[A] policymaker's mere refusal to overrule a subordinate's completed act

14   does not constitute approval." *Id.*  Rather, ratification requires the authorized policymaker to

15   make a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347.  Ratification "and thus the

16   existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct,

17   including its conduct in an investigation of the incident." *Dorger v. City of Napa*, No. 12-440,

18   2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (citing *Henry v. Cnty. of Shasta*, 132 F.3d

19   512, 518 (9th Cir. 1997)).  *See Christie*, 176 F.3d at 1240 (finding failure to discipline along with

20   after-the-fact conduct indicating policymaker agreed with subordinate's conduct sufficient to

21   show ratification).  "Ordinarily, ratification is a question for the jury." *Id.* at 1238–39.

22   Here, plaintiffs have alleged the following:

23   the details of this incident have been revealed to the authorized
     policy makers within [Sutter County], and [p]laintiffs are further
24   informed and believe, and thereupon allege, that such policy makers
     have direct knowledge of the fact of this incident. Notwithstanding
25   this knowledge, the authorized policy makers within [Sutter
     County] have approved of the conduct of [d]efendants, and have
26   made a deliberate choice to endorse the decisions of those
     [d]efendants and the basis for those decisions. By doing so, the
27   authorized policy makers within [Sutter County] have shown

28   /////

16

affirmative agreement with each individual [d]efendant officer's actions, and have ratified the unconstitutional acts of the individual [d]efendant officers.

(Compl. ¶ 50.)

These allegations are sufficient to state a *Monell* claim against defendant Sutter County on the basis of ratification. The Sutter defendants' motion to dismiss plaintiffs' *Monell* claims is DENIED.

In addition, the court takes account of the "Notice of Supplemental Authority" filed by plaintiffs on November 19, 2014. (ECF No. 15.) In that filing, plaintiffs cite to a recent Supreme Court case, *Johnson v. City of Shelby, Mississippi*, __ U.S. __, 135 S. Ct. 346 (2014), to support their position that in civil rights cases, courts apply the usual pleading requirements. (ECF No. 15 at 2.) This court's reasoning in this order is in conformance with that decision. *See Johnson*, 135 S. Ct. at 347 (in a constitutional claim against a city, the plaintiffs "[h]aving informed the city of the factual basis for their complaint, [] were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.").

E.     Declaratory Relief

Although the Sutter defendants seek to dismiss what they refer to as "[p]laintiffs' request for declaratory relief," the complaint does not request declaratory relief. (*See* ECF No. 6-1 at 9; Compl. at 21–22.) Plaintiffs respond as if the Sutter defendants had challenged their request for injunctive relief, and contend they have alleged policies and practices by Sutter County sufficient to survive a motion to dismiss the injunctive relief claim. (Opp'n at 18–19.)

It is premature at the pleading stage to eliminate a potential remedy should plaintiffs prevail in this litigation. *See Howard v. City of Vallejo,* No. 13–1439, 2013 WL 6070494, at *7 (E.D. Cal. Nov. 13, 2013) ("plaintiffs' claim for injunctive relief must be resolved on an evidentiary record and not at the pleading stage" (citing *City of L.A. v. Lyons*, 461 U.S. 95, 103, 105, 111 (1982); *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1040–41 (9th Cir. 1999); and *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985); *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1142 (N.D. Cal. 2000) (denying motion to dismiss claims for injunctive and declaratory relief, noting the "concerns raised by [d]efendants are better addressed after there has

17

1  been at least some development of the factual record")")).

2  Accordingly, the Sutter defendants' motion to dismiss plaintiffs' request for

3  declaratory relief is DENIED.

4  F.  California Civil Code § 52.1

5  1.  Conduct Involving Intimidation, Threats, Coercion

6  The Sutter defendants claim plaintiffs do not allege in other than a conclusory

7  manner that defendants' conduct involved intimidation, threats, or coercion, and as a result, their

8  claim under California Civil Code § 52.1, also known as the Bane Act, should be dismissed.

9  (ECF No. 6-1 at 10.)

10  Section 52.1 of the California Civil Code authorizes individual civil actions for

11  damages and injunctive relief by individuals whose federal or state rights have been interfered

12  with by threats, intimidation, or coercion. Cal. Civ. Code § 52.1(b). Section 52.1 "does not

13  extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or

14  coercion that interferes with a constitutional or statutory right." *Venegas v. Cnty. of L.A*, 32 Cal.

15  4th 820, 843 (2004). In *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), the

16  state appellate court held that § 52.1 did not apply to a claim brought by a plaintiff who had been

17  over-detained in a county jail as a result of a clerical error. The court held that § 52.1 was meant

18  "to address interference with constitutional rights involving more egregious conduct than mere

19  negligence." *Id.* at 958. Where the conduct is intentional, district courts have held *Shoyoye* does

20  not apply. *See M.H. v. Cnty. of Alameda*, No. 11-02868, 2013 WL 1701591, at *7 (N.D. Cal.

21  Apr. 18, 2013) (noting "the relevant distinction for purposes of the Bane Act is between

22  intentional and unintentional conduct, and . . . *Shoyeye* applies only when the conduct is

23  unintentional").

24  "Where Fourth Amendment unreasonable seizure or excessive force claims are

25  raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of

26  coercion independent from the coercion inherent in the seizure or use of force." *Dillman v.*

27  *Tuolumne Cnty.*, No. 13-00404, 2013 WL 1907379, at *21 (E.D. Cal. May 7, 2013). *See also*

28  *Rodriguez v. City of Modesto*, No. 10-01370, 2013 WL 6415620, at *13 (E.D. Cal. Dec. 9, 2013)

("A plaintiff bringing a Bane Act excessive force [claim] need not allege a showing of coercion independent from the coercion in the use of force.").

Here, plaintiffs' Fourth Amendment claims of excessive force and unreasonable search and seizure are sufficient to allege intentional conduct.  (Compl. at 6–10 & ¶ 55.) Plaintiffs have also alleged "[d]efendants violated [p]laintiffs' rights by the following conduct constituting threats, intimidation, or coercion:"

> a. Unlawfully searching and seizing [p]laintiffs and their residence;

> b. Pointing guns at each [p]laintiff in the absence of any threat or justification whatsoever;

> c. Threatening to kill [p]laintiffs' family dog (chihuahua);

> d. Conduct specifically defined as coercive in Civ. Code § 52.1(j), i.e., speech that "threatens violence against a specific person … and the person … against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent    ability to carry out the threat," to wit: threatening to shoot [p]laintiffs and family members while pointing guns at them, and causing [p]laintiffs to fear for their lives and the lives of their family members;

> e. arresting [p]laintiffs without probable cause, including forcefully handcuffing [p]laintiffs causing injuries and forcing Sharon Johnson from her hospital bed;

> f. continuing [p]laintiffs' arrest and custody after any probable cause that [d]efendants may have erroneously believed existed to justify [p]laintiffs' arrest had eroded, such that the officers' conduct became intentionally coercive and wrongful;

> g. violating [p]laintiff's rights to be free from unlawful seizures under Cal. Const. Art. 1, Sec. 13, by both wrongful arrest and excessive force.

(*Id.* ¶ 56.)

Plaintiffs have sufficiently stated a Bane Act claim to withstand a motion to dismiss.

### 2.   California Constitution, Article I, Section 13

The Sutter defendants also move to dismiss plaintiffs' Bane Act claim to the extent it is based on Article I, section 13 of the California Constitution.  The Sutter defendants contend that because Article I, section 13 has not been recognized to afford an action for damages,

1  plaintiffs may not seek damages by way of Civil Code § 52.1.  (ECF No. 6-1 at 10.)  In support of

2  this argument, the Sutter defendants rely on *City of Simi Valley v. Superior Court*, 111 Cal. App.

3  4th 1077 (2003).

4          In *Simi Valley*, the California Court of Appeal held that because there was "no

5  conduct specified which constitutes a state constitutional violation, there is no conduct upon

6  which to base a claim for liability under 52.1." *Id.* at 1085.  Unlike *Simi Valley,* plaintiffs here

7  have alleged conduct that constitutes a violation of Article I, section 13 of the California

8  Constitution.  Specifically, plaintiffs have alleged each defendant violated their rights "to be free

9  from unlawful and unreasonable seizure of one's person, including the right to be free from

10  unreasonable or excessive force, as secured by the California Constitution, Article 1, Section 13."

11  (Compl. ¶ 55(d) & at 6–9.)  *See, e.g.*, *Venegas v. Cnty. of L.A.*, 153 Cal. App. 4th 1230, 1232

12  (2007) (declining to dismiss plaintiffs' section 52.1 claims against two defendants for violations

13  of their rights under the Fourth Amendment and Article I, section 13 of the California

14  Constitution).   Section 13 in fact provides "the right of the people to be secure in their persons,

15  houses, papers, and effects against unreasonable seizures and searches may not be violated; and a

16  warrant may not issue except on probable cause, supported by oath or affirmation, particularly

17  describing the place to be searched and the persons and things to be seized." Cal. Const. art. I,

18  § 13.

19          Accordingly, the court DENIES the Sutter defendants' motion to dismiss

20  plaintiffs' claims under California Civil Code § 52.1.

21      G.     Negligence

22          1.     Cognizable Duty

23          The Sutter defendants argue that plaintiffs' negligence claim should be dismissed

24  for failure to allege a cognizable duty owed to plaintiffs.  (ECF No. 6-1 at 11.)

25          To state a claim for negligence under California law, plaintiffs must sufficiently

26  allege (1) a legal duty to use due care; (2) breach of such legal duty; and (3) the breach was a

27  proximate or legal cause of the resulting injury.  *Ladd v. County of San Mateo*, 12 Cal. 4th 1077,

28  1101 (2004).  A duty to a plaintiff is an essential element which "may be imposed by law, be

1  assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire* &

2  *Rubber Co.*, 6 Cal. 4th 965, 985 (1993).

3             Under California law, police officers have a duty not to use excessive force. *See*

4  *Munoz v. Union City*, 120 Cal. App. 4th 1077, 1101 (2004) (recognizing "a duty on the part of

5  police officers to use reasonable care in deciding to use and in fact using deadly force"). *See also*

6  *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013) ("This court has long recognized that

7  peace officers have a duty to act reasonably when using deadly force."); *Dillman*, 2013 WL

8  1907379, at *23 ("[I]t is well established that police officers have a duty not to use excessive

9  force."). State courts have also upheld negligence claims against police officers in connection

10  with unlawful detentions and improper searches. *See Venegas*, 153 Cal. App. 4th at 1249–52.

11                    2.    Relationship to False Arrest and Battery Claims

12             The Sutter defendants argue plaintiffs' negligence claim should be dismissed

13  because the alleged duties to refrain from unlawful arrest or excessive force are redundant to or

14  subsumed in their claims for false arrest and battery. (ECF No. 6-1 at 11–12.) The Sutter

15  defendants do not cite to any authority to support this argument, and the court does not find the

16  argument persuasive. *See, e.g.*, *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002)

17  (finding plaintiff had made sufficient claims against individual police officers and county under

18  California law for false arrest, false imprisonment, assault and battery, negligence, and gross

19  negligence).

20                    3.    Negligent Hiring, Training, Supervision and Retention

21             The Sutter defendants also argue plaintiffs' allegation of negligent hiring, training,

22  supervision, and retention as a basis for a claim against defendant Sutter County is improper.

23  (ECF No. 6-1 at 12.)

24             A county can be held liable for negligence of an employee under California

25  Government Code § 815.2. *See Robinson*, 278 F.3d at 1016. Section 815.2 provides "[a] public

26  entity is liable for injury proximately caused by an act or omission of an employee of the public

27  entity within the scope of his employment if the act or omission would, apart from this section,

28  have given rise to a cause of action against that employee or his personal representative." Cal.

Gov't Code § 815.2(a).  "California . . . has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where the public employee would also be immune."  *Id.*

With respect to hiring and supervision practices, however, there is no statutory basis under California law for declaring an entity directly liable for negligence.  *See Munoz,* 120 Cal. App. 4th at 1112–14; *see also Sanders v. City of Fresno*, No. 05-0469, 2006 WL 1883394, at *11 (E.D. Cal. July 7, 2006) (dismissing claim against defendant police chief for "negligent selection, training, retention, supervision, and discipline" because plaintiff failed to identify statute that imposed such duty); *Reinhardt v. Santa Clara Cnty.*, No. 05-05143, 2006 WL 3147691, at *10 (N.D. Cal. Nov. 1, 2006) ("All allegations of direct liability on the part of the entity defendants, such [as] the failure-to-train allegations, fail as a matter of law, because plaintiff has cited no statute imposing such liability.").

Here, plaintiffs' negligence claim includes allegations of both vicarious liability on the part of Sutter County, as well as liability for hiring, training, supervision and retention. (Compl. ¶¶ 62, 63.)

To the extent plaintiffs' negligence claim is based on defendant Sutter County's hiring, training, supervision, or retention of individual police officers, the Sutter defendants' motion is GRANTED and the claim is dismissed with prejudice.  The Sutter defendants' motion to dismiss plaintiffs' negligence claims against the individual Sutter defendants as well as against Sutter County under California Government Code § 815.2 is DENIED.

IV.   CONCLUSION

For the foregoing reasons, the court orders as follows:

1.  The Sutter defendants' Motion to Dismiss plaintiffs' claim against defendant Gwinnup arising out of the search warrant on the basis of judicial deception is GRANTED with leave to amend.

2.  The Sutter defendants' Motion to Dismiss plaintiffs' claims under 42 U.S.C. § 1983 and under state law against defendants Maples, Casner, and Gwinnup is DENIED.

/////

1          3.  The Sutter defendants' Motion to Dismiss plaintiffs' claims for violation of the

2  ADA and § 504 of the Rehabilitation Act is DENIED.

3          4.  The Sutter defendants' Motion to Dismiss plaintiffs' *Monell* claims is

4  DENIED.

5          5.  The Sutter defendants' Motion to Dismiss declaratory relief sought by plaintiffs

6  is DENIED.

7          6.  The Sutter defendants' Motion to Dismiss plaintiffs' claim under California

8  Civil Code § 52.1 is DENIED.

9          7. The Sutter defendants' Motion to Dismiss plaintiffs' claim of negligent hiring,

10  training, supervision and retention against defendant Sutter County is GRANTED with prejudice.

11  The Sutter defendants' Motion to Dismiss plaintiffs' remaining negligence claim is DENIED.

12          8.  Plaintiff shall file any amended complaint consistent with this order within

13  fourteen (14) days.

14          IT IS SO ORDERED.

15  DATED:  January 5, 2015.

16

17                      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28